# UNITED STATES DISTRICT COURT
для the
District of Columbia

| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>THE CELL SITE LOCATION DATA FOR TWO T-MOBILE CELL PHONES AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBERS IN VIOLATION OF 21 U.S.C. § 846 | ) ) ) ) ) ) ) | Case No. 21-sc-3040 |
|---|---|---|

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ District of __New Jersey__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the requested warrant will also function as a pen register order. An attorney for the government has certified that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA and USPIS. See 18 U.S.C. §§ 3122(b), 3123(b).

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David L. Crosby*
Applicant's signature

David L. Crosby, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 09/20/2021
Judge's signature

City and state: District of Columbia       Zia M. Faruqui, United States Magistrate Judge
Printed name and title

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means    ☑ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE CELL SITE LOCATION DATA FOR TWO<br>T-MOBILE CELL PHONES AND SEARCH OF<br>INFORMATION ASSOCIATED WITH THE SAME<br>NUMBERS IN VIOLATION OF 21 U.S.C. § 846 | )<br>)<br>)  Case No.  21-sc-3040<br>)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of ____New Jersey____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).  Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before     October 4, 2021     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Zia M. Faruqui    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   09/20/2021
                         _____
                         *Judge's signature*

City and state:    District of Columbia          Zia M. Faruqui, United States Magistrate Judge
                                                  *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>21-sc-3040 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                        *Executing officer's signature*

                                                        *Printed name and title*

## **ATTACHMENT A**

**Property to Be Searched**

1. This warrant applies to records and information associated with the cellular device assigned to call number **(202) 509-4445 (the TARGET PHONE NUMBER#1)** and **(202) 509-2005 (the TARGET PHONE NUMBER#2)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. Information about the location of **TARGET PHONE NUMBER#1** and **TARGET PHONE NUMBER#2** that is within the possession, custody, or control of T-Mobile.

# ATTACHMENT B

**Particular Things to be Seized**

I. **Government procedures for warrant execution**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose to the government the following information pertaining to the Account/TARGET PHONE NUMBERS listed in Attachment A-1:

   a. The following information about the customers or subscribers associated with the TARGET PHONE NUMBER#1 and TARGET PHONE NUMBER#2 accounts for the time period September 1, 2020 to April 6, 2021.

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records, and

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET PHONE NUMBER/Account, including:

        A. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        B. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

        C. all available per-call measurement data reports, to include LTE, IP session and Data.**]**

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 USC 841(a)(1) or 21 USC 846 involving Larry Eastman, Justice Eastman or unidentified subject(s) during the period September 1, 2020 to April 6, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section I and will not further review the information absent an

order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELL SITE LOCATION DATA FOR TWO T-MOBILE CELL PHONES AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBERS IN VIOLATION OF 21 U.S.C. § 846 | Case No. 21-sc-3040  <br><br>**Filed Under Seal** |

*Reference:*     USAO Ref. # 2021R00992
*Subject Account(s):* (202) 509-4445, (202) 509-2005

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, David L. Crosby, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41, 18 U.S.C. §§ 2703(a), and 2703(c)(1)(A), and former Chief Judge Hogan's Memorandum Opinion in In the Matter of the Application of the United States for an Order Authorizing the Monitoring of Geolocation and Cell Site Data for a T-Mobile Cell Phone Number ESN, 2006 WL 6217584 at *4 (D.D.C. 2006) (Hogan, C.J.) ("Hogan Opinion"), for information about 1) historic location data for the TARGET PHONE NUMBER#1 and TARGET PHONE NUMBER#2 as detailed in Attachment B-1[1], whose service provider is T-Mobile ("PROVIDER"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. As a provider of wireless communications service,

---

[1] Upon receipt of the information described in Section I of Attachment B-1, government-authorized persons will review the information to locate items described in Section II of Attachment B-1.

PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Specifically, I am a Special Agent with the Drug Enforcement Administration, and have been since August 1991. I am presently assigned to the Washington Division Office, Task Force Group 34 of DEA. Since joining DEA, I have participated in numerous investigations of individuals and organizations for violations of the federal narcotics laws. I have attended narcotic schools and seminars held within and outside the Washington metropolitan area relating to narcotics trafficking and the behaviors and methods of traffickers. I have received training in the methods, devices, routines and customs common to persons and organizations which illegally import and distribute controlled substances. As a result of this training and experience, I am familiar with the manner in which controlled substances are imported, manufactured and distributed in the Washington metropolitan area. Moreover, from experience and training, I know that narcotics traffickers use cellular telephones in the belief that by so doing, they can avoid detection by, and thwart the efforts of, law enforcement to identify their activities and seize their drugs and/or assets. I also know that drug traffickers frequently have access to several cellular telephones and that they periodically use newly acquired cellular telephones, all in an effort to avoid detection and to thwart law enforcement efforts.

3. I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and bank records and official government records, knowledge obtained from

other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the legal basis for the issuance of a search warrant.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 have been committed, are being committed, and will be committed by Larry Eastman, Justice Eastman and other unknown individuals. There also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses, as well as evidence of where the phone is currently located, and there is probable cause to believe the phone is an instrumentality of the offenses described herein.

5. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

**PROBABLE CAUSE**

6. On April 6, 2021, Diamond Lynch was discovered dead from an apparent overdose. The exact cause of death has been determined by the DC Medical Examiner to be Acute Fentanyl Intoxication.

7. A cellular telephone, believed to belong to Lynch, was turned over to MPD Detective Lorenzo James. This cellular telephone (TARGET PHONE NUMBER #1) was subsequently turned over to your affiant on April 16, 2021 for further examination and analysis.

8. A visual examination of TARGET PHONE NUMBER #1 by your affiant revealed the last recorded SMS/Text Message conversation on the device was recorded on April 5, 2021.

9. On April 5, 2021, at approximately 10:37pm, an outgoing SMS/Text Message was sent to (202) 892-8188 stating, "Aye larry this diamond, u got some jammers." A reply was then received from (202) 892-8188 stating, "Dam I just left but my mans got some real glossy ones."

10. Your affiant believes, based on his training and experience, that Lynch was contacting "Larry" to request the acquisition of drugs. Larry replied that he just left his location, but someone else was in possession of some good quality drugs. (202) 892-8188 is contained in the device's contacts as "Larry".

11. An outgoing SMS/Text Message was then sent from TARGET PHONE NUMBER #1 to (202) 892-8188 stating, "He up there rn?" A reply was then received from the (202) 892-8188 stating, "He at my spot up woodland just lmk (Let me know) wen u otw (when you on the way)...Yeah. U got cash tho right Nd how many u want?" Lynch then replied, "Okay

4

imma just get one and I got cash app and Apple Pay he don't got either one?" A reply was then received from the (202) 892-8188 stating, "Prolly cashapp ima ask him ... How long u Gon be tho?" Lynch then replied, "And ask him for me rq...I'm bouta call my ride now...What's the address again." A reply was then received from the (202) 892-8188, "Hld on I'm tryna get in contact w him...2324 raynolds place se...Pull up out back ina parking lot." Lynch then replied, "And he got cash app?" An SMS/Text Message was then received from the (202) 892-8188 stating, "Yeah, I'm bouta send it to u." Lynch then replied, p"Kk thank u I'm calling my ride now...Tell him my ride say 8."

12. Your affiant believes, based on his training and experience, that Lynch was asking Larry where she had to go and how she would pay for the drugs. Lynch said that she just wanted one, which your affiant believes may have been a request for one pill of fentanyl, which is a commonly acquired user quantity of drugs. Larry then directed Lynch to the location of 2324 Raynolds Place, SE, Washington DC. Lynch and Larry also agreed that she would pay for the drugs using "Cash App". Lynch said that she would be getting a ride to the location and that her ride was 8 minutes away. In emails accessed from Lynch's cell phone was a confirmation email from Lyft received at 11:03pm on April 5, 2021.

13. An SMS/Text Message was then received from the (202) 892-8188 stating, "$princessjaee202...Send it now." Lynch then forwarded a screenshot of her accessing "Jaee" cash app.

14. Your affiant believes, based on his training and experience, that Larry was sending Lynch a "Cash App" account to which she should deposit the drug payment. A review of Lynch's Cash App account on the device confirmed that she sent $30 to "Jaee...$princessjaee202" at 10:55pm on April 5, 2021. Your affiant is aware that $30 is a

common street level price for a pill of fentanyl. An incoming SMS/Text Message was received from the (202) 892-8188 at 10:55pm stating, "Lmk (Let me know) wen u sent it."

15.     Lynch replied, "I just sent it...Tell him my ride say 4." A reply was received from (202) 892-8188 stating, "lte lmk wen u like 4 minutes away." Lynch replied, "Okay..4 mins away."

16.     At approximately 11:09pm, an outgoing SMS/Text Message was sent from the device to (202) 892-8188 stating, "We out here."

17.     Your affiant believes, based on his training and experience, that Lynch was telling Larry that she was at the agreed upon location. This is the last outgoing message recorded on the device.

18.     A Lyft receipt was located in emails on the device. This receipt showed that Lynch was originally picked up at 2740 R Street, SE, Washington DC at 11:02pm. The receipt shows a "Stop" at 2336 Raynolds Pl., SE, Washington DC at 11:09pm and then a "Drop-off" at 1704 27th SE, Washington, DC at 11:15pm. The "Pick Up" and "Drop Off" are both at the corner of 27th and R Streets, SE, Washington DC. The last GPS on the device recorded an approximate location of 27th and R Streets, SE, Washington DC.

19.     Also, contained on the Device were applications for Lyft and Uber. Your affiant personally interviewed Lynch's mother, who told your affiant that TARGET PHONE NUMBER #1 was Diamond Lynch's phone number at the time of her death and that before that she was using TARGET PHONE NUMBER #2.

20.     A review of subscriber information received from T-Mobile show that they are the service providers for TARGET PHONE NUMBER #1 and TARGET PHONE NUMBER #2.

21. In June 2021, your affiant spoke to close friend of Diamond Lynch's (CS)[2] who had been identified by Lynch's mother as someone with whom investigators should speak. The CS said that Lynch was snorting "perc" (Percocets) and that her supplier was a young man named "Larry". The CS said that he/she drove Lynch to Southeast, Washington DC to purchase from "Larry" and described parking on Raynolds Place, where she purchased one "perc" for $30.00 from "Larry". The CS described the "perc" as a small round blue pill with the number 30. The CS said that Lynch used the term "jammers" when referring to "percs". Your affiant knows from training and experience that the CS was describing the appearance of commonly counterfeited Fentanyl to resemble prescription medicines. The CS has subsequently identified a photograph of Larry Eastman, from a photospread, as the person she knows as "Larry". The CS said that Larry's telephone number was (202) 597-7528, which was also subscribed to Larry Eastman at 2324 Raynolds Place, SE, Washington DC.

22. On May 27, 2021, Grand Jury Subpoena #GJ2021052777696 was issued to Lyft, Inc. for details concerning Lynch's Lyft travel history/location information. On June 16, 2021, your affiant obtained a federal search warrant in this district (21-SC-2009) from U.S. Magistrate Judge Faruqui for historical and prospective cell-site location information for telephone (202) 597-7528 (Larry Eastman's phone). When coupled together, these records confirmed that telephone device (202) 597-7528 was in the area of 2324 Raynolds Place, SE, Washington DC on the eight times Diamond Lynch used Lyft to travel to 2324 Raynolds Place, SE, Washington DC. Accordingly, it is believed that Lynch was obtaining drugs from Eastman on these occasions.

---

[2] CS is a personal friend of victim Diamond Lynch and CS' knowledge is from personal experiences with Diamond Lynch and conversations with Lynch. The CS has not provided any information known to be false and the information provided has been consistent with other information and corroborated through independent investigation.

23. On June 1, 2021, Grand Jury Subpoena #GJ2021060177789 was issued to Uber for details on any Uber Accounts associated with Uber. Uber has responded to this subpoena by advising your affiant that they have an account associated with Name: Diamond Lynch; Email: diamondjudehria1114@gmail.com; Phone number: TARGET PHONE NUMBER #2.

24. Your affiant believes, based the proceeding paragraphs that probable cause exists that Larry Eastman and Justice Eastman are involved in a conspiracy to distribute illicit drugs, namely fentanyl and those drugs caused the overdose death of Diamond Lynch. Your affiant believes that T-Mobile is in possession of location information for Diamond Lynch which will further demonstrate that Lynch was traveling to 2324 Raynolds Place, SE and meeting with Larry or Justice Eastman to obtain drugs.

**BACKGROUND ON CELL-SITE DATA AND LOCATION INFORMATION**

25. In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records." E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

26. Based on my training and experience, I know that PROVIDER can collect cell-site data about the TARGET PHONE NUMBER#1 and TARGET PHONE NUMBER#2. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

27. Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

investigation because the information can be used to identify the TARGET PHONE NUMBERs' user or users.

## AUTHORIZATION REQUEST

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

29.     Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, good cause exists under Rule 41 to permit the execution of the requested warrant at any time in the day or night. Further, pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a warrant to collect the requested information about the location of TARGET PHONE NUMBER#1 and TARGET PHONE NUMBER#2, as described in Attachment A, and to seize the evidence described in Attachment B.

Respectfully submitted,

*David L. Crosby*
David L. Crosby
Special Agent
Drug Enforcement Administration

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on September 20, 2021.

_____
HONORABLE JUDGE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA and USPIS. *See* 18 U.S.C. §§ 3122(b), 3123(b).

/s/ David T. Henek
David T. Henek
Assistant United States Attorney
District of Columbia